AO 106 (Rev. 04/10) Application for a Search Warrant (Modified: WAWD 10/28/16)

# UNITED STATES DISTRICT COURT

for the

Western District of Washington

| | | |
|---|---|---|
| In the Matter of the Search of | ) | |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) ) | Case No.   MJ21-622 |
| A white 2014 Chevy Impala with no front or rear license plate | ) ) ) | |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

A white 2014 Chevy Impala with no front or rear license plate, more particularly descrived in Attachment A hereto.

located in the _____Western_____ District of _____Washington_____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841, 846 | Possession of Controlled Substances with Intent to Distribute; Conspiracy |
| 18 U.S.C. § 922(g) | Felon in Possession of a Firearm |

The application is based on these facts:

☑ See Affidavit of , continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Pursuant to Fed. R. Crim. P. 4.1, this warrant is presented: ☑ by reliable electronic means, or ☐ telephonically recorded.

_____
*Applicant's signature*

Special Agent Shawna McCaan, FBI
*Printed name and title*

○ The foregoing affidavit was sworn to before me and signed in my presence, or

◉ The above-named agent provided a sworn statement attesting to the truth of the foregoing affidavit by telephone.

Date: ____11/19/2021____

_____
*Judge's signature*

City and state: Seattle, Washington

Michelle L. Peterson, United States Magistrate Judge
*Printed name and title*

USAO: 2021R01012

**AFFIDAVIT OF SHAWNA MCCANN**

STATE OF WASHINGTON    )
                       )    ss
COUNTY OF KING         )

I, Shawna McCann, a Special Agent with the Federal Bureau of Investigation, Seattle, Washington, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION

1.      This Affidavit is being submitted pursuant to Federal Rule of Criminal Procedure 41 in support of an Application for a warrant authorizing the search of the following location:

    a.      A white Chevy Impala with no front or rear license plate, dealership tags, and bearing VIN number 1G1155S38EV148495 used by Jimmy Miller Jr. and registered to Jimmy Miller at 23811 132nd Avenue SE, Apartment W8, Kent, Washington (the "**Subject Vehicle 2**"), as further described in Attachment A, which is incorporated herein by reference, to search for evidence, fruits and instrumentalities, as further described in Attachment B, which is incorporated herein by reference.

2.      As described in greater detail below, there is probable cause to believe that Jimmy Miller Jr. is trafficking narcotics, is a prohibited person carrying firearms, and has used numerous vehicles to facilitate his narcotics trafficking and unlawful firearms possession. Agents on physical surveillance have observed Jimmy Miller Jr. driving different vehicles on a daily to weekly basis, including **Subject Vehicle 2**.

3.      As set forth below, on November 9, 2021, agents obtained search warrants from this Court for Jimmy Miller Jr.'s apartment at 23811 132nd Avenue SE, Apartment W8, Kent, Washington (the "Subject Premises"), the rental vehicle he used at that time, and his person.

4.      On November 19, 2021, agents executed the search warrant on Jimmy Miller Jr.'s person, but at that time he had ceased using the rental vehicle. Prior to

AFFIDAVIT OF SHAWNA MCCANN - 1
USAO # 2021R01012

1  executing the person search warrant, agents observed Jimmy Miller Jr. exit an apartment
2  complex in Seattle, Washington – other than his primary residence—use a key to unlock
3  the **Subject Vehicle 2**, and got into the driver's seat of **Subject Vehicle 2** as the only
4  occupant of the vehicle.

5      5.      Based on my training and experience and the facts as set forth in this
6  Affidavit, there is probable cause to believe that violations of Title 21, United States
7  Code, Sections 841 (Distribution of Controlled Substances), and 846 (Conspiracy) and
8  Title 18, United States Code, Section 922(g) (Felon in Possession of a Firearm), have
9  been committed, are being committed, and will be committed by Jimmy Miller Jr. There
10 is also probable cause to believe that **Subject Vehicle 2** described above contains
11 evidence of the aforementioned offenses. As such, there is probable cause to search the
12 location described in Attachment A for evidence of these crimes, as described in
13 Attachment B. Obtaining the information sought in this Affidavit is necessary to further
14 the investigation into these offenses.

15     6.      I know, based on my training, that under federal law a search warrant is
16 typically not required to search a vehicle per the automobile exception to the warrant
17 requirement.  However, I nonetheless seek this warrant out of an abundance of caution.

18                          **AGENT BACKGROUND**

19     7.      I am employed as a Special Agent (SA) with the Federal Bureau of
20 Investigation (FBI) and have been employed with the FBI since September 2017. I am
21 currently assigned to the Seattle Field Division where I am a member of the violent
22 crime, gang, and Transnational Organized Crime – Western Hemisphere squad. In this
23 capacity, I investigate, inter alia, violations of Title 18, United States Code, Section
24 922(g) et seq., and related offenses. I have received over 400 hours of classroom training
25 including, but not limited to, gang investigations, drug identification, drug interdiction,
26 money laundering techniques and schemes, smuggling, and the investigation of
27 individuals and/or organizations involved in gang activity, firearms trafficking, and
   trafficking of controlled substances.

AFFIDAVIT OF SHAWNA MCCANN - 2
USAO # 2021R01012

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

8.      In my role as a Special Agent for the FBI, I have participated in gang and narcotics investigations that have resulted in the arrest of individuals and the seizure of illicit narcotics and/or narcotics-related evidence, firearms, and the forfeiture of narcotics-related assets. I have been involved in the service of federal and state search warrants as part of these investigations. I am also familiar with the manner in which criminals, including gang members/associates and drug traffickers, use telephones, often cellular telephones, to conduct their unlawful operations, and how they code their conversations to disguise their unlawful activities.

9.      I have written affidavits in support of court-authorized federal warrants and orders in the Western District of Washington for GPS tracking of telephones, Pen Register/Trap and Trace, and search warrants. Additionally, I have testified in grand jury proceedings, written investigative reports, and conducted and participated in numerous interviews of drug traffickers of various roles within drug organizations, which has provided me with a greater understanding of the methods by which drug trafficking organizations operate.

10.      I am an investigative law enforcement officer of the United States within the meaning of 18 U.S.C. § 2510(7). As such, I am empowered to conduct investigations of, and to make arrests for, violations of the Controlled Substance Act, Title 21, United States Code, Section 801 et seq., and related offenses.

11.      The facts set forth in this Affidavit are based on my own personal knowledge; knowledge obtained from other individuals during my participation in this investigation, including other law enforcement personnel; review of documents and records related to this investigation; communications with others who have personal knowledge of the events and circumstances described herein; and information gained through my training and experience. Because this Affidavit is submitted for the limited purpose of establishing probable cause in support of the Application for the search warrants, it does not set forth each and every fact that I or others have learned during the course of this investigation.

AFFIDAVIT OF SHAWNA MCCANN - 3
USAO # 2021R01012

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

## PROBABLE CAUSE FOR MILLER'S VEHICLE

12.     Jimmy Miller Jr., aka "Jimmy-Jam," has previously been convicted of crimes punishable by imprisonment for a term exceeding one year, to wit: *Possession of Crack Cocaine with Intent to Distribute,* and *Felon in Possession of a Firearm,* in the United States District Court for the Western District of Washington, Cause No. CR09-0087RAJ, on or about August 28, 2009; and *Violation of the Uniform Controlled Substances Act; Delivery of Cocaine,* in King County Superior Court, Cause No. 03-1-07253-9 SEA, on or about June 26, 2003. As a result of his federal conviction in 2009, Jimmy Miller Jr. was on federal supervised release in June 2013.

13.     On or about June 13, 2013, Jimmy Miller Jr. was detained based on probable cause of violations of his federal supervised release, including Felon in Possession of a Firearm. On July 25, 2013, a federal Criminal Complaint was issued for Jimmy Miller Jr. for one count of Felon in Possession of a Firearm. On August 8, 2013, Jimmy Miller Jr. was indicted on one count of Felon in Possession of a Firearm. On May 15, 2014, Jimmy Miller Jr. was convicted by a jury of one count Felon in Possession of a Firearm. On September 19, 2014, Jimmy Miller Jr. was sentenced to 89 months in prison and three years of supervised release (*see* 13-CR-00249-RAJ). Jimmy Miller Jr.'s three-year term of federal supervised release commenced on November 25, 2020.

14.     In late summer 2021, agents spoke with a confidential source (CS1)[1] who advised agents that CS1 saw Jimmy Miller Jr. brandishing a firearm, that he was trafficking/distributing cocaine, and that Jimmy Miller Jr. was using phone number (206) 530-7878 (TT). Around the same time, agents spoke with another confidential source

---

[1] CS1 has provided credible and reliable information in the past on other investigations that led to charges and seizures of narcotics and firearms. CS1 has multiple felony convictions involving crimes of violence. CS1 also has several gross misdemeanor or misdemeanor convictions, which include making false or misleading statements more than five years ago. CS1 has outstanding warrants for misdemeanor offenses and a felony, none of which involve crimes of violence or crimes relating to dishonesty. CS1 is a paid informant with Seattle Police Department for over five years who has not been closed for cause by any other law enforcement agency. CS1's identity is not being disclosed in this application to protect CS1's safety.

AFFIDAVIT OF SHAWNA MCCANN - 4
USAO # 2021R01012

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  (CS2)[2] who advised agents that Jimmy Miller Jr. was carrying a firearm, was assaulting

2  and shooting at people, and was trafficking/distributing cocaine. CS2 also provided TT as

3  Jimmy Miller Jr.'s phone number.

4    15.    Agents located a Bellevue Police Department incident report, dated August

5  11, 2021, for theft of car parts in which Jimmy Miller Jr. was listed as the victim, as the

6  registered owner of the vehicle, with a contact phone number of TT.

7    16.    On September 2, 2021, Jimmy Miller Jr.'s federal probation officer

8  provided information that Jimmy Miller Jr. has used marijuana while on supervised

9  release since early 2021 based on positive urinalysis tests and admissions from Jimmy

10  Miller Jr., including on or about February 19, 2021, April 2, 2021, and April 11, 2021, for

11  which the probation officer filed a Noncompliance Report with the court (*see* 13-CR-

12  00249-RAJ, Dkt. 137). The probation officer reported that Jimmy Miller Jr. has become

13  more defiant lately, through September 2, 2021.

14    17.    I have consulted with TFO Jon Huber, a Detective with the Seattle Police

15  Department's Gang Unit, who has extensive knowledge and training on local gang

16  members, associates, and activity in the Seattle area. TFO Huber is familiar with Jimmy

17  Miller Jr. from prior investigations and identified Jimmy Miller Jr. as a member of the

18  East Union Street Hustler gang.  In addition, it is my understanding that Jimmy Miller Jr.

19  has himself admitted his past membership in that gang to law enforcement, including to a

20  U.S. Probation Officer some years ago, and that he has tattoos consistent with his

21  membership in that gang.

22    18.    On September 7, 2021, the Honorable S. Kate Vaughan issued a search

23  warrant for GPS location data with an integrated Pen Register and Trap and Trace order

24  for TT.

25

26  [2] CS2 has provided credible and reliable information in the past on other investigations. CS2 has multiple non-violent felony and gross misdemeanor convictions involving crimes of theft. CS2 also has several gross

27  misdemeanor or misdemeanor convictions, which include making false or misleading statements and attempted forgery more than five years ago. CS2 is a paid informant with Seattle Police Department. CS2's identity is not being disclosed in this application to protect CS2's safety.

AFFIDAVIT OF SHAWNA MCCANN - 5
USAO # 2021R01012

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

19.     During the period of GPS location data on TT from September 7, 2021 to October 7, 2021, agents were able to use the GPS location data and Pen Register and Trap and Trace data to identify the residence of and other locations frequented by Jimmy Miller Jr. Agents also used GPS location data for TT to conduct physical surveillance on Jimmy Miller Jr. and observed him in the same location as the GPS location data for TT at multiple different locations and times, thereby confirming that Jimmy Miller Jr. is the user of TT. Finally, agents observed Jimmy Miller Jr. engaged in activity indicative of drug trafficking coming and going from his residence, 23811 132nd Avenue SE, Apt W8, Kent, Washington (the "Subject Premises").

20.     For example, on October 6, 2021, agents observed that GPS location data for TT placed Jimmy Miller Jr. at an apartment complex in the Central District of Seattle from around 11:57 p.m. on October 5, 2021 to around 8:12 a.m. on October 6, 2021. GPS location data for TT showed that Jimmy Miller Jr. then travelled to a different apartment complex in the Northgate area of Seattle from around 8:57 a.m. to 12:42 p.m. GPS location data for TT showed that Jimmy Miller Jr. then travelled to the Federal Way area for only a few minutes before travelling back northbound to a third apartment complex in Renton where he stayed for about an hour. Agents conducting physical surveillance observed Jimmy Miller Jr., identified based on a comparison to his driver's license photograph, exit an apartment building at this Renton apartment complex with an unknown female. Jimmy Miller Jr. and this female got into a white Toyota Corolla bearing Washington license plate BZZ3480 and drove off. Washington Department of Licensing records showed that this vehicle was a rental vehicle. Agents followed Jimmy Miller Jr. directly back to his residence in Kent, the Subject Premises, where agents observed Jimmy Miller Jr. park the rental vehicle in assigned, covered carport stall #31. Jimmy Miller Jr. and this female exited the vehicle carrying several shopping bags and a backpack and go into the breezeway, up the stairs to the second floor, and into Unit W8, the Subject Premises. Additionally, Jimmy Miller Jr. has listed the Subject Premises as his residence on his Washington driver's license.

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

21.     Based on my training and experience, I know that drug traffickers frequently have associates, including girlfriends, who assist with their drug trafficking operations by storing and distributing the drug product and by renting vehicles under their names in order to evade law enforcement detection. I also know that drug traffickers frequently have multiple stash and distribution locations for their drug product, including the apartments or residences of their associates and girlfriends, which they visit before returning to their own residences. Based on my training and experience, I believe that, in conjunction with prior physical surveillance observations discussed below and confidential source information, that Jimmy Miller Jr.'s activities of visiting three or four different apartment complexes, other than his own, for various periods of time in the morning through early afternoon, and then returning to the Subject Premises and use of a rental vehicle to evade law enforcement detection is indicative of drug trafficking activity, specifically the storing, distributing, and collecting of narcotics proceeds and that the Subject Premises likely contains Jimmy Miller Jr.'s narcotics and/or narcotics proceeds.

22.     On September 9, 2021, in the morning, GPS location data for TT placed Jimmy Miller Jr. at the Subject Premises. Agents arrived at the apartment complex and observed a black Toyota 4Runner bearing California license plate 8VLD146 parked in an unassigned, uncovered parking spot in front of the W building near unit W8. At approximately 11:33 a.m., GPS location data for TT placed the device at Uncle Ike's Pot Shop, 2310 E Union Street in Seattle. Agents arrived at this marijuana dispensary and observed Jimmy Miller Jr. standing in the parking lot talking to Terrence Goodwin near the parked black Toyota 4Runner bearing California license plate 8VLD146. Agents positively identified Jimmy Miller Jr. and Terrence Goodwin based off their driver's license photographs, online/social media photographs, and from being familiar with both individuals from prior investigations. Washington Department of Licensing records showed that the black Toyota 4Runner was a rental car.

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

23.     At approximately 11:41 a.m., agents observed Jimmy Miller Jr. get into the driver's seat of the black 4Runner. At approximately 11:44 a.m., agents observed Goodwin approach the driver's door of the black 4Runner, which was open, and lean in and talk to Jimmy Miller Jr. for a few second; Goodwin then walked back toward the marijuana dispensary and Jimmy Miller Jr. shut the driver's door. Less than a minute later, Goodwin came back to the driver's door of the 4Runner, which Jimmy Miller Jr. opened again, and Goodwin stood in the open driver's door area talking to Jimmy Miller Jr. and looking around. At this time, agents' view became obstructed by a passing vehicle and agents were unable to see if Jimmy Miller Jr. and Goodwin made contact or engaged in any hand-to-hand transactions. At approximately 11:45 a.m., agents observed Goodwin walking away from the 4Runner; Jimmy Miller Jr. shut the driver's door and drove out of the marijuana dispensary parking lot in the black Toyota 4Runner. Based on the GPS location data for TT, Jimmy Miller Jr. departed the Subject Premises and drove to visit Goodwin at the marijuana dispensary and engaged in conduct that appeared to agents to be indicative of a drug deal/distribution. Accordingly, agents believe that Jimmy Miller Jr. likely keeps some of his drug supply at the Subject Premises.

24.     Per the Standard Conditions of Federal Supervision (*see* 13-CR-00249-RAJ, Dkt. 115), Jimmy Miller Jr. "shall not associate with any person convicted of a felony" unless granted permission by his probation officer. Goodwin has seven state felony convictions for drug possession with intent to manufacture/deliver, unlawful possession of a firearm, assault, drug possession,[3] theft, robbery, and rape of a child. Additionally, Goodwin is known by agents to frequent high crime and drug trafficking areas, including S Jackson Street and 23rd Avenue S in Seattle. I have observed numerous drug deals occur in the parking lot at this intersection and am aware, through personal experience and the experience of other agents with whom I work, that this

---

[3] The Washington Supreme Court has recently held that Washington's state law prohibiting mere possession of controlled substances is unconstitutional.

AFFIDAVIT OF SHAWNA MCCANN - 8
USAO # 2021R01012

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   parking lot is a common drug trafficking area associated with gang activity. Notably, on

2   April 11, 2021, Goodwin and two other people associated with the Union Street gang

3   were shot in the parking lot of S Jackson Street and 23rd Avenue S in Seattle.

4        25.    On September 14, 2021, from around 8:45 a.m. to 11:00 a.m., GPS location

5   data for TT placed Jimmy Miller Jr. at another apartment complex in Bellevue,

6   Washington. Agents arrived at that location and observed Jimmy Miller Jr. accessing the

7   passenger side of the same black Toyota 4Runner referred to above. At approximately

8   11:40 a.m., agents observed the 4Runner pull into the Chevron gas station in Bellevue,

9   and Jimmy Miller Jr. get out of the driver's side of the 4Runner and use the vacuums at

10  the gas station to vacuum the car while an unknown female passenger went inside the gas

11  station store. At this time, GPS location data for TT placed the device at this Chevron gas

12  station. Agents observed Jimmy Miller Jr. move the 4Runner to the gas pumps and fill

13  the vehicle with gas and then depart. Agents then followed Jimmy Miller Jr. as he drove

14  the 4Runner to the SeaTac Airport rental car return with all the windows rolled down.

15       26.    At approximately 2:00 p.m., GPS location data for TT showed that

16  Jimmy Miller Jr. had left the car rental return location at the airport. At approximately

17  2:30 p.m., agents observed Jimmy Miller Jr. arrive at his apartment complex in the

18  passenger seat of a 2004 grey Toyota Camry bearing Washington license plate

19  990XDN, registered to Shelley Houser at 2459 S 216th Street, Apt 224, Des Moines,

20  Washington. Agents observed Jimmy Miller Jr. get out of the passenger seat of the

21  grey Toyota and use a key to check the mailboxes at his apartment complex. The grey

22  Toyota then parked in front of Building W of the apartment complex. Agents

23  observed Jimmy Miller Jr. and an unknown female, matching the physical description

24  of the unknown female that Jimmy Miller Jr. was observed with earlier this day in

25  Bellevue, exit the Toyota Camry; Jimmy Miller Jr. grabbed a black backpack out of

26  the backseat of the Camry and the female grabbed some paperwork out of the Camry.

27  Agents observed Jimmy Miller Jr. and the female go into Building W and enter the

AFFIDAVIT OF SHAWNA MCCANN - 9
USAO # 2021R01012

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  unit on the right side of Building W, on the second floor, which corresponds to Unit

2  W8, the Subject Premises. GPS location data for TT shortly thereafter placed the

3  device at the Subject Premises.

4       27.    Based on my training and experience and other information set forth herein,

5  I believe that Jimmy Miller Jr. vacuumed out the rental car and drove with all the window

6  rolled down before returning the rental car in order to get rid of drug odor and residue to

7  evade law enforcement detection. I know based on my training and experience that drug

8  traffickers frequently use rental cars, instead of personal vehicles, to conduct their drug

9  trafficking activities in order to evade law enforcement detection and to be able to change

10  out vehicles on a regular basis.

11       28.    Later in the evening on September 14, 2021, GPS location data for TT

12  showed Jimmy Miller Jr. was at Judkins Park in Seattle. At approximately 6:30 p.m., the

13  Pen Register and Trap and Trace on TT, showed that Jimmy Miller Jr. was

14  communicating with phone number (206) 854-0719. Based on law enforcement database

15  checks, this phone number was associated with Dimitris Tinsley. At approximately 6:35

16  p.m., agents observed a new white Audi SUV pull up quickly to the park and a male

17  identified by agents as Dimitris Tinsley, based on comparison to his driver's license

18  photograph, near the Audi for a few seconds before Tinsley walked away carrying a

19  black backpack. The Audi then drove off quickly using side roads, and Tinsley walked

20  towards a vehicle with a license plate registered to Enterprise rental car.

21       29.    As set forth above, Jimmy Miller Jr. is prohibited from associating with

22  convicted felons per his federal supervised release conditions. Dimitris Tinsley has a

23  prior federal felony conviction in 2010 in this Court for Conspiracy to Distribute

24  Controlled Substances under CR08-255MJP and two local felony convictions for drug

25  possession.[4]  In addition, Tinsley, like Jimmy Miller Jr., admitted to being a member of

26

27

[4] The Washington Supreme Court has recently held that Washington's state law prohibiting mere possession of controlled substances is unconstitutional.

AFFIDAVIT OF SHAWNA MCCANN - 10
USAO # 2021R01012

1  the East Union Street Hustlers at the time of his arrest on his federal charges, and was a
2  known associate of Miller's prior to Tinsley's arrest on those charges. *See, e.g.*, *U.S. v.*
3  *Tinsley*, CR09-255MJP, Complaint at Dkt. 1, Page 4, ¶¶ 7, 8.

4      30.   In mid-October 2021, agents spoke with a confidential source (CS3)[5] who
5  advised agents that Tinsley continues to be associated with gang members and gang
6  activity and that Tinsley had recently emerged as a higher level narcotics trafficker.[6] CS3
7  reported that Tinsley had a recording label and clothing label but that both were not
8  successful businesses, and that Tinsley was living a lifestyle incommensurate with any
9  legitimate income, including recently purchasing a new home and two Rolex watches.

10      31.   Accordingly, agents believe Jimmy Miller Jr. is in violation of his federal
11  supervised release conditions and is engaged in criminal activity, including narcotics
12  trafficking activities.  These activities include coming to and from the Subject Premises
13  before meeting with suspected drug trafficking associates and using a cell phone,
14  specifically TT, to communicate with drug trafficking associates.

15      32.   On October 20, 2021, the Honorable Michelle L. Peterson issued a search
16  warrant for renewed GPS location data with an integrated Pen Register and Trap and
17  Trace order for TT.

18

19

20

---

[5] CS3 has been a confidential source with SPD since 2016. CS3 has been a confidential source for the FBI since
August of 2018. CS3 became a confidential source after an arrest on drug charges. CS3 was not charged after
working for law enforcement. CS3 has since worked as a paid informant. CS3 has provided reliable information in
the past, including information that led to successful prosecutions of a number of individuals. CS3 has felony
convictions, none of which involve crimes relating to dishonesty, but include violence-related crimes for possession
of a firearms and attempted residential burglary, all more than eight years ago. CS3 also has gross misdemeanor or
misdemeanor convictions involving crimes of dishonesty and violence for identity theft, false reporting, and assault,
all more than eight years ago. The identity of CS3 is not being disclosed in this Application. I believe that doing so
could place CS3's safety and security in jeopardy and compromise this and other ongoing investigations in which
CS3 is involved and is being utilized.

[6] Agents believe that Tinsley may have increased his drug trafficking volume after federal agents conducted a
separate investigation into a drug trafficking organization with gang ties and arrested over 15 individuals in April
2021, creating the opportunity for other gang-related individuals, like Tinsley, to fill the drug trafficking void in the
gang territories of Seattle.

AFFIDAVIT OF SHAWNA MCCANN - 11
USAO # 2021R01012

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   33.    On October 29, 2021, the Honorable Brian A. Tsuchida, issued a search

2   warrant authorizing law enforcement and a trained narcotics canine to conduct a sniff in

3   the stairwell, breezeway, and exterior front door/porch area of the Subject Premises.

4   34.    On November 3, 2021, agents conducted physical surveillance on the

5   Subject Premises. Based on GPS location for TT, Jimmy Miller Jr. had left the Subject

6   Premises around 4:00 p.m. on November 3, 2021 and travelled to the same Northgate

7   apartment complex from approximately 4:30 p.m. to 6:45 p.m. Between approximately

8   7:45 p.m. and 8:30 p.m., GPS location data for TT showed that Jimmy Miller Jr. was in

9   the vicinity of the BluWater Bistro –Leschi in Seattle.

10   35.    At approximately 8:10 p.m., agents conducted physical surveillance while a

11   trained narcotics-detection handler and canine conducted a sniff in the stairwell and

12   breezeway leading to the Subject Premises.  The training and qualifications of the trained

13   handler, Seattle Police Department Detective William Shaub and his canine "Devon" are

14   attached hereto as Exhibit C and incorporated by this reference.

15   36.    After searching the open stairwell and breezeway, K9 Devon indicated to

16   the presence of narcotics odor towards the area of the Subject Premises. Devon then

17   conducted a sniff of the front door of the Subject Premises, including near the lower seam

18   of the door and door handle, and provided a trained alert to the presence of narcotics odor

19   coming from the Subject Premises.[7]

20   37.    Later that same night, at approximately 9:15 p.m., GPS location data for TT

21   showed that Jimmy Miller Jr. then drove to an apartment complex in the Tacoma area

22   before driving towards the Subject Premises at approximately 10:00 p.m. At

23

24   ─────────────
[7] While conducting physical surveillance in support of the narcotics canine sniff, agents detected, based on their

25   training and experience, the odor of marijuana in the exterior areas of Building W where the Subject Premises is
located; however, the narcotics canine utilized to conduct this sniff is not trained to alert to the odor of marijuana

26   and is only trained to alert to the odors of cocaine, crack cocaine, heroin, and methamphetamine. Regardless,
because Jimmy Miller Jr. is on federal probation, he is prohibited from possessing or using marijuana. Based on my

27   training and experience and the training and experience of other agents with whom I work, I know that narcotics
canines can detect the presence of narcotics odor several hours, and in some cases up to 24-36 hours, after the item
or area was last in or around narcotics.

AFFIDAVIT OF SHAWNA MCCANN - 12
USAO # 2021R01012

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   approximately 10:30 p.m., agents observed a dark colored Chevy sedan bearing

2   California license plate 8LUJ889 pull into the apartment complex for the Subject

3   Premises and park in the assigned, covered carport spot #31 in front of the Subject

4   Premises where agents have previously observed Jimmy Miller Jr. park. Agents observed

5   Jimmy Miller Jr., identified based on a comparison to his driver's license photograph,

6   exit the driver's seat of the dark colored Chevy sedan, and an unknown female exit the

7   passenger seat, and walk into the Subject Premises together. Agents obtained Department

8   of Licensing records for the dark colored Chevy sedan that showed it was a Hertz rental

9   car. The previous evening, November 2, 2021, for approximately 45 minutes, agents

10  observed that the GPS location data for TT placed Jimmy Miller Jr. at the SeaTac Airport

11  near the rental car building.

12      38.     At approximately 10:49 p.m., K9 Devon, with her handler Det. Shaub,

13  conducted a sniff of the exterior of the dark colored Chevy sedan that Jimmy Miller Jr.

14  had exited about twenty minutes prior. The narcotics canine first conducted a sniff of

15  vehicles parked next to the dark colored Chevy sedan and did not provide any alerts until

16  reaching the front of the dark colored Chevy sedan. Once reaching the dark colored

17  Chevy sedan, the narcotics canine displayed a distinct behavior change and provided an

18  alert for the presence of narcotics odors in the areas of the front driver's side wheel well

19  and driver's side door. During the sniff, agents observed that Jimmy Miller Jr. had left

20  one of the rear passenger windows of the Subject Vehicle rolled down.

21      39.     Finally, agents have conducted physical and electronic surveillance on

22  Jimmy Miller Jr. from on or around September 7, 20201 to November 3, 2021. During

23  this time, agents have not observed Jimmy Miller Jr. at any legitimate place of

24  employment or traveling in patterns indicative of any legitimate employment. Rather,

25  Jimmy Miller Jr.'s patterns of activity show frequent trips to at least four different

26  apartment complexes on a regular basis, indicative of drug trafficking activities,

27  including visiting stash house locations and/or dropping off narcotics for redistribution

and collecting narcotics proceeds. Agents have observed Jimmy Miller Jr. driving at least

AFFIDAVIT OF SHAWNA MCCANN - 13
USAO # 2021R01012

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  three different rental vehicles during this period of time, shopping at the Bellevue mall

2  during the day for several hours, and frequently hanging out at Uncle Ike's Pot Shop,

3  2310 E Union Street in Seattle, such that Jimmy Miller Jr.'s lifestyle and expenses are

4  incommensurate with his lack of any seemingly legitimate employment.[8]

5      40.    On November 9, 2021, the Honorable Paula L. McCandlis issued search

6  warrants for the Subject Premises, the dark colored Chevy sedan, and Jimmy Miller Jr.'s

7  person. Agents intend to execute these search warrants on or about November 19, 2021.

8      41.    In the evening on November 9, 2021, GPS location data for TT placed

9  Jimmy Miller Jr. at the SeaTac Airport near the rental car building.

10      42.    On November 10, 2021, at approximately 9:45 a.m., GPS location data for

11  TT showed that Jimmy Miller Jr. was home at the Subject Premises. At that time, agents

12  were conducting physical surveillance at the Subject Premises and observed a white

13  Mercedes sedan parked in the assigned, covered carport spot #31 where agents have

14  observed Jimmy Miller Jr. park on multiple occasions on prior physical surveillance.

15      43.    Agents believe that Jimmy Miller Jr. returned the dark colored Chevy sedan

16  that was the subject of the prior search warrant to the rental car facility on November 9,

17  2021 and was using a different vehicle.

18  **SPECIFIC PROBABLE CAUSE AS TO SUBJECT VEHICLE 2**

19      44.    On November 17, 2021, agents observed **Subject Vehicle 2** parked in the

20  assigned, covered parking stall #31 in front of the Subject Premises. Around that same

21  time, GPS location data for TT showed that Jimmy Miller Jr. was at the Subject Premises.

22      45.    On November 18, 2021, agents observed **Subject Vehicle 2** parked in the

23  vicinity of the Seattle apartment complex located at E Olive Street and 17th Avenue in

24  Seattle, Washington. Around that same time, GPS location data for TT showed that

25

26  _____

[8] During the fall of 2021, agents were aware that there was still a shortage of rental vehicles, such that the price of rental cars was significantly higher due to the high demand and low supply available. Agents were aware that rental car prices during this period ranged from around $200-$300 per day. Jimmy Miller Jr. was observed driving rental vehicles for multiple days and weeks.

27

AFFIDAVIT OF SHAWNA MCCANN - 14
USAO # 2021R01012

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  Jimmy Miller Jr. was at this apartment complex. Agents have observed GPS location data
2  for TT at this apartment complex in the past on several occasions.

3        46.    On November 19, 2021, from approximately 7:45 a.m. to 8:30 a.m., agents
4  observed Jimmy Miller Jr. come and go from the apartment complex at E Olive Street
5  and 17th Avenue in Seattle, Washington multiple times, talking on a cell phone in the
6  apartment courtyard and unlocking, accessing, and placing a yellow bag into **Subject**
7  **Vehicle 2.**

8        47.    At approximately 8:38 a.m., agents observed Jimmy Miller Jr. exit from
9  this apartment complex, get into the driver's seat of **Subject Vehicle 2** and start the car
10  with a key. Jimmy Miller Jr. was the only occupant in the vehicle.

11        48.    At this point, agents executed the search warrant on Jimmy Miller Jr.'s
12  person by approaching the vehicle in a marked police vehicle and escorting Jimmy Miller
13  Jr. out of the vehicle without incident.  As they approached Jimmy Miller Jr., agents saw he was on
14  an active video call of some type.

15        49.    In plain view in **Subject Vehicle 2,** agents observed two cell phones –
16  including the phone that Jimmy Miller Jr. was actively using - the center console
17  cupholders.  One of the investigators terminated the active call.

18        50.    I know, based on my training and experience, that it is possible in some
19  instances for someone to remotely wipe, or delete, data from cellular telephones with an
20  active signal to the network.  According, to prevent either cell phone seen in the **Subject**
21  **Vehicle** from being remotely tampered with pending the issuance of this warrant,
22  investigators put both phones into a signal-blocking evidence bag and then left them
23  inside **Subject Vehicle 2.**

24        51.    Based on my training and experience, I know that it is common for drug
25  traffickers to carry multiple cell phones and to change cell phone numbers and/or devices
26  frequently. Drug traffickers use multiple phones in an attempt to compartmentalize their
27  illicit business and minimize the chances of law enforcement discovering the full scope
  of their activities.  For example, traffickers may use one phone with some of their

AFFIDAVIT OF SHAWNA MCCANN - 15
USAO # 2021R01012

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  customers, and yet another phone with their suppliers.  That way, if law enforcement

2  arrests someone the trafficker communicates with, the rest of their network is harder for

3  law enforcement to detect.

4     52.     I also know that drug traffickers frequently use cell phones to communicate

5  about and coordinate their drug trafficking activities with their drug trafficker associates,

6  including suppliers, customers, and redistributors, such that cell phones of drug

7  traffickers contain evidence of these crimes.[9]

8     53.     After Jimmy Miller Jr. was removed from **Subject Vehicle 2,** agents closed

9  the front driver's door to **Subject Vehicle 2** and then K9 Cisco, with his handler Det.

10  Pete Lazarou, conducted a sniff of the exterior of **Subject Vehicle 2**. K9 Cisco displayed

11  a distinct behavior change and provided an alert for the presence of narcotics odors in the

12  area of the seam of the vehicle near the front driver's door window. K9 Cisco's and Det.

13  Lazarou's background, training and qualifications are set forth in Attachment C to this

14  affidavit.

15     54.     Agents transported **Subject Vehicle 2** to a secure evidence storage facility

16  pending application of this search warrant.

17     55.     Based on the cell phones observed in plain view in **Subject Vehicle 2** and

18  the narcotics K9 alert on the exterior of **Subject Vehicle 2,** agents believe that Jimmy

19  Miller Jr. is engaged in drug trafficking activities as well as unlawful possession of

20  firearms activities and is using **Subject Vehicle 2** to further his drug trafficking activities.

21  Agents further believe that the requested search warrant of **Subject Vehicle 2** will lead to

22  the seizure of evidence, fruits and instrumentalities of those offenses.

23

24

25

26  [9] On November 18, 2021, agents obtained an anticipatory search warrant for a vehicle associated with Jimmy Miller

27  Jr. based upon the conditions that the keys were located in the Subject Premises and the vehicle was parked in the
assigned, covered parking stall #31. Because **Subject Vehicle 2** was not located in parking stall #31 at the Subject
Premises, the anticipatory warrant does not apply to **Subject Vehicle 2.**

AFFIDAVIT OF SHAWNA MCCANN - 16
USAO # 2021R01012

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

## KNOWLEDGE BASED ON TRAINING AND EXPERIENCE

56.     Based upon my training and experience, and my discussions with other experienced officers and agents involved in drug investigations, I know the following:

a.      Traffickers of controlled substances, and those who assist them, maintain and tend to retain accounts or records of their drug trafficking activities, including lists of drug quantities and money owed (pay-owe sheets), telephone records including contact names and numbers, photographs, and similar records of evidentiary value. These items are generally kept in locations where drug traffickers believe their property is secure and will remain undetected from law enforcement, such as inside their homes, vehicles, storage lockers, and businesses.

b.      Traffickers of controlled substances commonly maintain records reflecting names or nicknames, addresses, and/or telephone numbers of their suppliers, customers, and associates in the trafficking organization. Traffickers commonly maintain this information in books or papers as well as in their cellular telephones. Traffickers often maintain cellular telephones for ready access to their clientele and to maintain their ongoing drug trafficking. Traffickers often change their cellular telephone numbers to avoid detection by law enforcement, and it is common for traffickers to use more than one cellular telephone at any one time.

c.      Traffickers maintain evidence of their criminal activity at locations that are convenient to them, including their residences, vehicles, and storage lockers. This evidence often includes not only contraband and paraphernalia, but also financial records, records of property and vehicle ownership, records of property rented, and other documentary evidence relating to their crimes. Drug traffickers sometimes take or cause to be taken photographs and/or video recordings of themselves, their associates, their property, and their illegal product. These individuals often maintain these photographs and recordings in their possession or at their premises.

AFFIDAVIT OF SHAWNA MCCANN - 17
USAO # 2021R01012

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

d.      During the execution of search warrants, it is common to find papers, letters, billings, documents, and other writings which show ownership, dominion, and control of vehicles, residences, and/or storage units.

e.      Persons trafficking and using controlled substances commonly sell or use more than one type of controlled substance at any one time.

f.      Traffickers frequently maintain items necessary for weighing, packaging, and cutting drugs for distribution. This paraphernalia often includes, but is not limited to, scales, plastic bags and cutting/diluting agents and items to mask the odor of drugs.

g.      It is common for drug dealers to also be users of their product, and that it is common for the drug user to maintain paraphernalia associated with the use of controlled substances.

h.      Traffickers frequently maintain records, books, notes, ledgers, travel documents, and other papers relating to the transportation and distribution of controlled substances, including travel records, in locations convenient to them, such as their residences and vehicles.

i.      Traffickers frequently keep on hand amounts of United States currency in order to maintain and finance their ongoing narcotics business. They commonly deal in currency because of its untraceable nature. They sometimes convert their illicit currency into currency equivalents such as cashier's checks and money orders. Traffickers often conceal in secure locations such as their residences and vehicles currency, financial instruments, precious metals, jewelry, and other items of value which are the proceeds of drug transactions, and evidence of consequential financial transactions relating to obtaining, transferring, secreting, or spending large sums of money made from engaging in drug trafficking activities, and financial books, records, receipts, notes, ledgers, diaries, journals, and all records relating to income, profit, expenditures, or losses, and

AFFIDAVIT OF SHAWNA MCCANN - 18
USAO # 2021R01012

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

other records showing the management of such assets. Traffickers often have money counters.

j.      Traffickers often maintain weapons, including guns, ammunition, and body armor, in secure locations such as their residences and vehicles, in order to protect their drugs and drug proceeds.

k.      Traffickers very often place assets in names other than their own, use fictitious names and identification, or use rental vehicles and properties, to avoid law enforcement detection. Even though these assets are in other persons' or business' names, the drug traffickers actually own and/or use these assets and exercise dominion and control over them.

l.      Individuals who regularly handle controlled substances often leave the scent of controlled substances on other items they handle, including currency from narcotics sales/proceeds, firearms, door handles, and clothing thereby transferring the odor of the controlled substances to those items. Controlled substance detection canines (also called narcotics canines) are trained to alert to the odor of narcotics substances in or around these items.

m.      Illegal drug trafficking is a continuing activity over months and even years. Illegal drug traffickers will repeatedly obtain and distribute controlled substances on a somewhat regular basis, much as any distributor of a legitimate commodity would purchase stock for sale and, similarly, such drug traffickers will have an "inventory" which will fluctuate in size depending upon various factors to include the demand and supply for the product. I would expect the trafficker to keep records of his illegal activities for a period of time extending beyond the time during which he actually possesses illegal controlled substances, in order that he can maintain contact with his criminal associates for future drug transactions, and so that he can have records of prior transactions for which, for example, he might still be owed money, or might owe someone else money. These records are often created in code.

AFFIDAVIT OF SHAWNA MCCANN - 19
USAO # 2021R01012

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

57.     As noted above, drug dealers use cellular telephones as a tool or instrumentality in committing their criminal activity. They use them to maintain contact with their suppliers, distributors, and customers. They prefer cellular telephones because, first, they can be purchased without the location and personal information that land lines require. Second, they can be easily carried to permit the user maximum flexibility in meeting associates, avoiding police surveillance, and traveling to obtain or distribute drugs. Third, they can be passed between members of a drug conspiracy to allow substitution when one member leaves the area temporarily. Since cellular phone use became widespread, every drug dealer I have contacted has used one or more cellular telephones for his or her drug business. I also know that it is common for drug traffickers to retain in their possession phones that they previously used, but have discontinued actively using, for their drug trafficking business. Based on my training and experience, the data maintained in a cellular telephone used by a drug dealer is evidence of a crime or crimes. This includes the following:

a.      The assigned number to the cellular telephone (known as the mobile directory number or MDN), and the identifying telephone serial number (Electronic Serial Number, or ESN), (Mobile Identification Number, or MIN), (International Mobile Subscriber Identity, or IMSI), or (International Mobile Equipment Identity, or IMEI) are important evidence because they reveal the service provider, allow us to obtain subscriber information, and uniquely identify the telephone. This information can be used to obtain toll records, to identify contacts by this telephone with other cellular telephones used by co-conspirators, to identify other telephones used by the same subscriber or purchased as part of a package, and to confirm if the telephone was contacted by a cooperating source or was intercepted on a wiretap here or in another district.

b.      The stored list of recent received calls and sent calls is important evidence. It identifies telephones recently in contact with the telephone user. This is valuable information in a drug investigation because it will identify telephones

AFFIDAVIT OF SHAWNA MCCANN - 20
USAO # 2021R01012

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

used by other members of the organization, such as suppliers, distributors, and customers, and it confirms the date and time of contacts. If the user is under surveillance, it identifies what number he called during or around the time of a drug transaction or surveilled meeting. Even if a contact involves a telephone user not part of the conspiracy, the information is helpful (and thus is evidence) because it leads to friends and associates of the user who can identify the user, help locate the user, and provide information about the user. Identifying a defendant's law-abiding friends is often just as useful as identifying his drug-trafficking associates.

c.      Stored text messages, emails, and any social media content/messages (like Facebook messenger) are important evidence, similar to stored numbers. Agents can identify both drug associates, and friends of the user who likely have helpful information about the user, his location, and his activities.

d.      Photographs and video recordings on a cellular telephone, including metadata, are evidence because they help identify the user, either through his or her own picture/video, or through pictures/videos of friends, family, and associates that can identify the user and the locations the user has been. Pictures/videos also identify associates likely to be members of the drug trafficking organization. Some drug dealers photograph/video groups of associates, sometimes posing with weapons and showing identifiable gang signs. Also, digital photos often have embedded "geocode" or GPS information embedded in them. Geocode information is typically the longitude and latitude where the photo was taken. Showing where the photo was taken can have evidentiary value. This location information is helpful because, for example, it can show where coconspirators meet, where they travel, and where assets might be located.

e.      Stored web browsing history is important evidence because it shows the user's activities and places of interest, including if the user looked up addresses, restaurants, and other businesses on a web browser on the cell phone,

which can show where coconspirators meet, where they travel, and where assets might be located. Moreover, through web browsing history, a user can also access or look up associates or coconspirators on social media, which is valuable information in a drug investigation because it will identify members of the organization, such as suppliers, distributors and customers.

f.      Stored address records are important evidence because they show the user's close associates and family members, and they contain names and nicknames connected to phone numbers that can be used to identify suspects.

g.      Stored data in money transfer applications, such as Venmo and CashApp, are important evidence because they show from whom and to whom the user is sending money. In the era of digital currency and online money transfers, I know based on my training and experience, that drug traffickers use Cash App and other money transfer applications to pay for drug products in lieu of physical cash. Accordingly, any stored data on money transfer applications on cell phones can show the user's drug trafficking associates, customers, and other connections.

h.      Stored location data, including from any map applications on the cell phone, are important evidence because the data can show where the user has been, including addresses of residences and business parking lots, which can show stash house locations, drug transaction meeting locations, or the addresses of a drug trafficker's associates, customers, or suppliers.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

AFFIDAVIT OF SHAWNA MCCANN - 22
USAO # 2021R01012

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

**CONCLUSION**

58.     Based on the above-described information, there is probable cause to believe that contained within **Subject Vehicle 2** there exists evidence (including at least two cell phones), fruits, and instrumentalities of violations of 21 U.S.C. §§ 841 and 846 (distribution of, and possession with intent to distribute, controlled substances, and conspiracy to do the same), and 18 U.S.C. § 922(g)(1) (felon in possession of a firearm), committed by Jimmy Miller Jr.  I therefore respectfully request that this Court issue this search warrant authorizing the search of **Subject Vehicle 2** as further described in Attachment A for the search and seizure of the items more specifically described in Attachment B.

Shawna McCann, Affiant
Special Agent, FBI


The above-named agent provided a sworn statement to the truth of the foregoing affidavit by telephone on the 19th day of November, 2021.


The Honorable Michelle L. Peterson
United States Magistrate Judge

AFFIDAVIT OF SHAWNA MCCANN - 23
USAO # 2021R01012

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

**ATTACHMENT A**

A white 2014 Chevy Impala with no front or rear license plate, dealership tags, and bearing VIN number 1G1155S38EV148495 used by Jimmy Miller Jr. and registered to Jimmy Miller at 23811 132nd Avenue SE, Apartment W8, Kent, Washington (the "**Subject Vehicle 2**"), as depicted below:



With respect to the location to be searched, the search is to include all containers, locked or unlocked, where the items in Attachment B could be found.

AFFIDAVIT OF SHAWNA MCCANN - 24
USAO # 2021R01012

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

**ATTACHMENT B**

**Items to Be Seized**

From the location listed in Attachment A of these warrants, the government is authorized to search for and seize the following items, which are evidence, instrumentalities, and/or fruits of the commission of the following crimes: distribution and possession with intent to distribute controlled substances, in violation of Title 21, United States Code, Section 841(a)(1), and conspiracy to commit these offenses in violation of Title 21, United States Code, Section 846; and unlawful possession of a firearms, in violation of Title 18, United States Code, Section 922(g)(1), including the following:

1. Any controlled substances and suspected controlled substances, including but not limited to cocaine, crack cocaine, and marijuana.

2. Drug paraphernalia, meaning items used or intended to be used to store, process, package, use, and/or distribute controlled substances, such as plastic bags, cutting agents, scales, measuring equipment, chemicals or similar items used to test the purity and/or quality of controlled substances, and similar items.

3. Drug transaction records, meaning documents such as ledgers, receipts, notes, and similar items relating to the acquisition, transportation, and distribution of controlled substances.

4. Customer and supplier information, including items identifying drug customers and drug suppliers, such as telephone records, personal address books, correspondence, diaries, calendars, notes with phone numbers and names, "pay/owe sheets" with drug amounts and prices, maps or directions, and similar items.

5. Financial records, including bank records, safe deposit box records and keys, credit card records, bills, receipts, tax returns, vehicle documents/titles, financial instruments, money transfers, wire transmittals, negotiable instruments, bank drafts, cashier's checks, business records, documents related to the purchase, sale, and

AFFIDAVIT OF SHAWNA MCCANN - 25
USAO # 2021R01012

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

improvement of real estate, and any other records that show income and expenditures, net worth, or relate to obtaining, transferring, secreting, laundering, or spending large sums of money acquired from engaging in the acquisition and distribution of controlled substances.

6. Cash, precious metals, jewelry, and other similar items of value, and/or proceeds of drug transactions, as well as money counters.

7. Documents and other property, such as photographs, mail, or other items, tending to show who resides in and has dominion and control over the location.

8. Firearms or parts thereof, ammunition, firearms magazines, firearms accessories, body armor, firearms boxes, firearms manuals, records of the purchase of firearms, or other items related to the ownership or use of firearms.

9. Cell phones and other communications devices. If such cell phones or other communications devices are seized, the government may search them without further authorization for the following items:

a. Assigned phone number and identifying telephone serial number (ESN, MIN, IMSI, or IMEI);

b. Stored list of recent received, sent, and missed calls;

c. Stored contact information;

d. Stored photographs, videos, addresses, calendar notes, notes, map history, or documents/files of or related to narcotics, currency, firearms or other weapons, evidence of suspected criminal activity, and/or the user of the phone or suspected co-conspirators, including any embedded GPS data or other metadata associated with those photographs, videos, and other items;

e. Stored text messages related to the aforementioned crimes of investigation, including Apple iMessages, Blackberry Messenger messages, or other similar messaging services where the data is stored on the telephone;

f. Stored emails related to the aforementioned crimes of investigation;

g. Stored voicemails related to the aforementioned crimes of investigation;

AFFIDAVIT OF SHAWNA MCCANN - 26
USAO # 2021R01012

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1    h. Stored web browsing history related to the aforementioned crimes of

2  investigation;

3    i. Stored social media content/history related to the aforementioned crimes of

4  investigation;

5    j. Stored banking or money transfer history, including application based money

6  transfer data/history (i.e. Venmo or CashApp account data/history); and

7    k. Stored location data, including from any map applications on the cell phone.

8

9    The applied-for warrant authorizes the forensic examination of any seized cell

10  phone or other communication device for the purpose of identifying electronically stored

11  data described herein. This review may be conducted by any federal or local government

12  personnel, sworn or non-sworn, assisting in the investigation, who may include, in

13  addition to law enforcement officers and agents, federal and local contractors and support

14  staff, attorneys for the government, attorney support staff, and technical experts. Pursuant

15  to the requested warrant, the FBI may deliver a complete copy of the electronic data to

16  the custody and control of attorneys for the government and their support staff for their

17  independent review.

18

19

20

21

22

23

24

25

26

27

AFFIDAVIT OF SHAWNA MCCANN - 27
USAO # 2021R01012

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970



**Attachment "C"**

Seattle Police Narcotics ProAct Unit

Detective Pete Lazarou & Canine Cisco



## Experience

I, Detective Pete Lazarou #6893, am a fully commissioned Police Officer employed by the Seattle Police Department and currently assigned to the Seattle Police Department's Narcotics ProAct Unit.  My assignment is in an undercover role where I am dressed in civilian clothes and drive an unmarked detective vehicle which is not identifiable as law enforcement.

I have been a Police Officer since July 2001.  I attended the Washington State Law Enforcement Training Academy, which consisted of 720 hours of basic law enforcement training. Of the 720 hours of instruction, approximately 16 hours was dedicated to narcotics investigation.  This training included viewing and smelling several different narcotics.

My duties involve conducting both short-term and long-term narcotic operations which include writing and serving search warrants.  I also am tasked with working with confidential informants (CIs), conducting undercover operations, and conducting surveillance on narcotic traffickers. In my training, I have learned how to recognize indicators involved with narcotics related activities.  During my career, I have been involved in hundreds of narcotics investigations and arrests as either the primary or assisting officer/detective.  Because of this experience and training, I am familiar with common methods of investigating drug trafficking and manufacturing organizations and have become familiar with the methods of operation of drug traffickers and manufacturers, including, but not limited to: their methods of importing, exporting, storing, concealing, and packaging drugs; their methods of transferring and distributing drugs; their use of cellular telephones; and their use of code words, counter surveillance, and other methods of avoiding detection of law enforcement.  I am also familiar with the various methods of packaging, delivering, transferring, and laundering drug proceeds.  Additionally, through training and experience, I can identify illegal drugs by sight and texture.  I am trained to use a field test kit to identify the presumptive presence of controlled substances.

In May 2004 I successfully completed a 240-hour narcotics detection canine training course with my previous narcotics canine from the Washington State Department of Corrections on McNeil Island.

## Canine "Cisco"

K9 Cisco is an adult yellow Labrador and has been assigned to the Narcotics ProAct Unit since October 6, 2021.  K9 Cisco is trained in the detection of illegal narcotics and is trained to search for, and alert to, the

presence of the odors of cocaine, crack cocaine, heroin, methamphetamine, and their respective derivatives. K9 Cisco is **not** trained to detect the odor of marijuana.

In October 2021, I successfully completed a 100-hour narcotics detection canine training with K9 Cisco under the direction of Marysville Police Department K9 Officer Brad Smith.  K9 Ofc. Smith assisted me with training K9 Cisco and imprinting him with the aforementioned odors. K9 Ofc. Smith is currently an evaluator for narcotic detection canine teams through the Washington State Criminal Justice Training Commission and the Pacific Northwest Police Drug Detection Dog Association.  He is certified as a Master Handler Team in both Narcotic Detection and Generalist (Patrol) Canine through the Washington State Police Canine Association and is certified as a Trainer of Narcotic Detection and Generalist (Patrol) Canine Teams through the Washington State Police Canine Association.

On October 6th, 2021, K9 Cisco and I were certified as a narcotics detection canine team through the Washington State Criminal Justice Training Commission (CJTC), meeting the standards set forth by Washington Administrative Code (WAC) 139-05-915 and CJTC policy.  In addition, on [date], K9 Cisco and I were certified by the Washington State Police Canine Association. Certification standards require that all trained odors are tested in each of the following areas: outside areas, building searches, vehicle searches, and package searches.

When deployed, K9 Cisco is worked in a specific area and/or "search pattern" and I am trained to watch for his "changes of behaviors."  K9 Cisco's "changes of behaviors" range from a distinct breathing change to intense sniffing with his mouth closed, sometimes accompanied by a distinct body turn or head snap towards the odor as well as a noticeable change in tail movement.  Upon detecting one of the aforementioned odors, K9 Cisco will give this "change of behavior." K9 Cisco will then work to the "source" of the odor and give his "alert" to that location. K9 Cisco is trained to give a "passive alert" in which K9 Cisco presses his nose in the area where the odor is emanating while maintaining a rigid body position.  K9 Cisco has consistently demonstrated the capability to detect the odors emanating from the aforementioned controlled substances.

K9 Cisco and I train together on a consistent and ongoing basis with other handlers and certified trainers. The training consists of varied search scenarios, set times, and quantities/types of narcotics, as well as distractions. K9 Cisco has proven to be reliable and consistent in all phases of this training.

### K9 Certifications

- WAC Narcotics 2021-current
- WSPCA certification 2021- current

*I certify under penalty of perjury under the laws of the state of Washington that the foregoing is true and correct (RCW 9A.72.085) and I am entering my authorized user ID and password to authenticate it.*

**Detective Pete Lazarou**

**Seattle Police Narcotics ProAct Unit**

Attachment "C"

Seattle Police Narcotics ProAct Unit

Canine Narcotics Team

Detective P. Lazarou and K9 Cisco

Seattle Police Case Number: Seattle Police Case Number

Outside Agency Case Number:  FBI 281D-SE-93445

Date:  11-19-2021

Type of Application:  Vehicle

Location:  1700blk E Olive St, Seattle WA

**Assignment:**
I, Detective P. Lazarou #6893, am a fully commission Police Officer employed by the Seattle Police Department. My current assignment is a detective/canine handler with the Seattle Police Narcotics ProAct Unit.

**Incident:**

On 11-19-2021, I was requested to assist FBI and SPD TFO's at the 1700blk of East Olive St in Seattle WA. Once at the location FBI Agent McCann requested to have my K9 partner sniff the exterior of a 2014 Chevy Impala which was bearing a temp tag in the rear window as A4566680. I retrieved K9 Cisco from my undercover vehicle and presented the exterior of the listed vehicle.  I started at the front driver's side fender and began working around the vehicle.  As I reached the driver's door with K9 Cisco I recognized his change of behavior. K9 Cisco alerted the driver's door seam between the driver's window and rear window.  I rewarded K9 Cisco and advised FBI Agent McCann that K9 Cisco positively alerted to the exterior of the listed vehicle.





*I certify under penalty of perjury under the laws of the state of Washington that the foregoing is true and correct (RCW 9A.72.085) and I am entering my authorized user ID and password to authenticate it.*

**Detective P. Lazarou #6893** _____